**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James D. Murphey, | No. CIV 04-2430-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| TPS Enterprises, an Arizona general partnership; Patrick J. Simeri and Pier Simeri, husband and wife; Thomas L. Schoaf, Sr. and Shirley A. Schoaf, husband and wife; Creative Products, Inc., an Arizona corporation; and Adapto, Inc., an Arizona corporation, | |
| Defendants. | |

Currently before the Court is Defendants TPS Enterprises, Patrick and Pier Simeri, Thomas and Shirley Schoaf, Creative Products, Inc., and Adapto Inc.'s ("Defendants") Motion for Summary Judgment (Dkt.#37); Plaintiff James D. Murphey's ("Plaintiff") Cross Motion for Summary Judgment (Dkt.#42-2); and Defendants' Motion to Strike. (Dkt.#55-2). After reviewing the papers and the record and finding oral argument to be unnecessary, the Court issues the following Order.

## I.     Procedural History

On November 5, 2004, Plaintiff filed his initial complaint in this Court. (Dkt.#1).[1] On February 2, 2006, after the Court's Rule 16 Fed.R.Civ.P. Scheduling Conference, the Court, upon the Parties' stipulation, permitted Plaintiff to file his Third Amended Complaint (the "Complaint"). The Complaint alleges one claim of patent infringement pursuant to 35 U.S.C.A. § 271 against the Defendants. Plaintiff specifically alleges that the Defendants have infringed Plaintiff's United States Letters Patent No. 5,780,842 (the "'842 Patent") entitled "Item Dispensing Control System for Use in Vending Devices" (the "Letters Patent") as well as Plaintiff's "Trigger Circuit" invention to which a patent application was filed (the "Trigger Circuit Invention"). (Complaint ¶ 13). After a full discovery period, the Defendants filed the instant Motion for summary judgment challenging the validity of Plaintiff's claim. The Motion is fully briefed and ripe for this Court's consideration.[2]

## II.    Factual Background

Plaintiff is the inventor of a unique snowcone machine to which the Letters Patent and the Trigger Circuit Invention derive. In the Fall of 1998, Plaintiff, along with two individuals, Marvin Crater and Eugene Walker, met with Defendant Patrick Simeri regarding the manufacture of Plaintiff's snowcone vending machine by Defendant Creative Products, Inc. ("Creative Products or "CPC"). Defendant Simeri and co-Defendant Thomas Schoaf are members and owners of Defendant Creative Products, Inc. Shortly thereafter, the Parties entered into negotiations regarding the manufacture of the machines. On November 6, 1998, Plaintiff and Defendant TPS Enterprises ("TPS" or "TPS Enterprises"), a general partnership formed by Defendants Simeri and Schoaf, entered into an "Exclusive License Agreement"

---

[1] Plaintiff is currently proceeding pro se, but for the majority of the litigation was represented by counsel who was granted leave to withdraw on June 13, 2007 based upon his transition to the public sector. (Dkt.#64).

[2] The Court has also received and appropriately considered Plaintiff's "Supplement Reply to Defendants' Motion to Strike Cross-Motion for Summary Judgment" filed on August 8, 2007. (Dkt.#72).

- 2 -

1 regarding Plaintiff's Letters Patent and Trigger Circuit Invention. Specifically, the Exclusive
2 License Agreement granted TPS the rights to manufacture and/or sell such technology by
3 providing in pertinent part:

4     LICENSOR hereby grants to LICENSEE the exclusive right and license to
    make, have made, use, sell, and offer for sale apparatus covered by a VALID
5     CLAIM of said LICENSES PATENTS in the United States, . . .

6 (DSOF ¶ 6).

7     The Exclusive License Agreement also contemplated that Plaintiff's technology could
8 be sub-licensed to third parties as well. Notably, the Agreement provided compensation to
9 Plaintiff as the Licensor in the form of 30% of gross revenue earned on all sub-licenses as
10 well as 10% of all gross revenue earned on all manufactured products sold by the TPS.
11 (DSOF ¶ 7). The Exclusive License Agreement also provided for the assignment of TPS'
12 rights. (DSOF ¶ 9). Moreover, the Exclusive License Agreement gave Plaintiff the right to
13 terminate the agreement if Plaintiff did not receive at least $18,000 in royalties in the first
14 calendar year after execution of the agreement. (DSOF ¶ 11). After the Exclusive License
15 Agreement was executed, TPS engaged in discussions with third-party manufacturers
16 regarding the sale, manufacture and sub-license of Plaintiff's inventions. During such
17 discussions with third-parties regarding Plaintiff's technology, Defendants offered non-
18 disclosure agreements to protect against disclosure of Plaintiff's technology. In one such
19 non-disclosure agreement, Defendant Creative Products rather than "TPS Enterprises" was
20 identified as the licensee of Plaintiff's technology. In another such agreement with a third-
21 party, "TPC Enterprises" rather than "TPS Enterprises" was identified as the licensee.
22 Despite efforts regarding business opportunities involving Plaintiff's technology, no
23 agreements or sales were made generating revenue. As such, by January 1, 2000,
24 approximately one year after the Exclusive License Agreement was executed, there had been
25 no sales of Plaintiff's licensed products and thus no royalties earned by Plaintiff under the
26 Agreement. In a letter dated on January 4, 2000, Defendant Simeri disclosed to Plaintiff that
27 "no sales [had been made] of any item covered by the patent or license" and that Plaintiff,
28 pursuant to the terms of the Mutual License Agreement, had the right to terminate the

- 3 -

1 Agreement. (DSOF ¶20). Defendant Simeri sent another letter to Plaintiff on March 3, 2000, 2 advising again the lack of any sales as well as recommending that Plaintiff offer the invention 3 to another company. (DSOF ¶21). On June 26, 2000, Plaintiff entered into a new license 4 agreement with his partner Mr. Crater and on October 24, 2000, in a letter to Defendants 5 Schoaf, Simeri and TPS Enterprises, Plaintiff terminated the Exclusive License Agreement. 6 (DSOF ¶ 24).

7 On February 20, 2002, Plaintiff filed a complaint in Maricopa County Superior Court 8 against Defendants TPS Enterprises, Patrick and Jane Doe Simeri and Thomas and Jane Doe 9 Schoaf asserting claims of breach of contract and misrepresentation. (DSOF ¶ 29). Plaintiff 10 alleged that these Defendants breached the Exclusive License Agreement by failing to 11 actively pursue the production of a prototype and the manufacture of the Plaintiff's product. 12 (DSOF ¶ 29). With respect to Plaintiff's breach of contract claim, the Superior Court, in 13 granting summary judgment for the Defendants stated:

> [A]s Plaintiff himself concedes, there was no requirement in the parties' Exclusive License Agreement that Defendants manufacture and/or market the inventions. . . . A reasonable juror simply could not find that Defendants breached the Exclusive License Agreement or their covenant of good faith and fair dealing by failing to do something the Agreement did not require them to do - make, have made, use, sell, or offer for sale Plaintiff's inventions. . . .

The Superior Court further noted in a footnote:

> The Agreement expressly permitted Defendants to enter into sublicenses and assign all of their rights and obligations under the Agreement to a third-party without the prior approval of Plaintiff. This further establishes that the Agreement did not obligate Defendants to manufacture and/or market Plaintiff's inventions.

(DSOF ¶ 31).

22 Final judgment was entered in the Superior Court case on December 9, 2004, and 23 Plaintiff did not appeal. (DSOF ¶ 32).

24 **III.   Summary Judgment Standard**

25 A motion for summary judgment may be granted only if the evidence shows "that 26 there is no genuine issue as to any material fact and that the moving party is entitled to 27 judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat the motion, the non-moving 28 party must show that there are genuine factual issues "that properly can be resolved only by

- 4 -

1 a finder of fact because they may reasonably be resolved in favor of either party." Anderson
2 v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).  The party opposing
3 summary judgment "may not rest upon the mere allegations or denials of [the party's]
4 pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."
5 Rule 56(e).  See Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586-87
6 106 S.Ct. 1348 (1986).  The evidence must be viewed in the light most favorable to the
7 nonmoving party.  Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc).

**IV.    Analysis**

Defendants assert that summary judgment on Plaintiff's patent infringement claim is appropriate because Plaintiff is essentially relitigating the case that he lost before the Superior Court and is thus barred by principles of collateral estoppel.  In addition, Defendants contend that the Exclusive License Agreement acts as a complete affirmative defense to Defendants' possession and use of the Plaintiff's Patents during the Exclusive License Agreement period.  Moreover, Defendants argue that there is no evidence that the Defendants used or somehow infringed Plaintiff's Patents or technology after Plaintiff terminated the Agreement.  In opposition, Plaintiff disputes that he is relitigating the breach of contract and misrepresentation claims he lost before the Superior Court.  In addition, Plaintiff asserts that because he was fraudulently induced into entering the Exclusive License Agreement it should be given no effect and thus Defendants' use of the Patents during the Agreement period constitutes infringement.  Moreover, Plaintiff asserts that even if the Exclusive License Agreement is not rescinded by the Court, there is still sufficient evidence to suggest infringement by the Defendants.

**A.    Evidence Regarding Infringement of Plaintiff's Patents**

In order to prove infringement of Plaintiff's Patents, despite the existence of the Exclusive License Agreement, Plaintiff offers two theories.  First, Plaintiff claims that the "Defendants fraudulently induced Plaintiff to enter into the Exclusive License Agreement that should therefore be rescinded."  (Plaintiff's Response, p.7).  Plaintiff states that in the absence of the Exclusive License Agreement, the Defendants infringed Plaintiff's patented

technology by using them without permission.  Second, Plaintiff asserts that regardless of whether the Exclusive License Agreement is rescinded, infringement can be found because of the use of the Patents by non-parties to the Exclusive License Agreement such as Defendant Creative Products, Inc., and non-party TPC. (Plaintiff's Response, p.7).

### (1) Fraudulent Inducement

First, with regards to Plaintiff's fraudulent inducement theory regarding the Exclusive License Agreement, such a claim was not raised in Plaintiff's Complaint before the Court. Rather, Plaintiff's Complaint asserts only that the Defendants committed patent infringement based upon Defendants continued infringement in the Letters Patent and Trigger Invention. (Complaint ¶ 13). There is no claim that the Exclusive License Agreement should be rescinded for fraudulent inducement by the Defendants. In the absence of such a claim, Plaintiff's claim is waived. See London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981) (deeming claim not raised in amended complaint waived); see also Rule 8(a) Fed.R.Civ.P.

In addition, even if this claim challenging the validity of the Exclusive License Agreement before this Court was properly presented, the claim still fails based upon the evidence presented upon summary judgment. Plaintiff's theory regarding the alleged fraudulent inducement by Defendants is based upon Plaintiff's speculative statements and conjecture and is simply not supported by any admissible evidence. For instance, in support of Plaintiff's fraudulent inducement theory, Plaintiff cites as evidence an unsigned non-uniform interrogatory response detailing a lengthy recitation of his theory of the case, including that Defendants never intended to manufacture Plaintiff's product and fraudulently induced Plaintiff to enter the Exclusive License Agreement. (PCSOF ¶ 34; Plaintiff's Response, pp. 7-8). This interrogatory response appears to be nothing more than attorney argument and is not in any way evidence to generate a genuine issue of material fact suggesting that the Exclusive License Agreement should be rescinded. See United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) ("[A]n attorney's unsworn argument does not constitute evidence . . ."). Moreover, a significant amount of the non-uniform interrogatory

1  response appears to be based upon self-serving affidavits offered by Plaintiff and his business
2  partner, Mr. Eugene Walker. For instance, Plaintiff offers his declaration making statements
3  such as: (1) "[o]nly after Defendants decided not to manufacture the Snowcone Machine and
4  Vending Machine (but instead "lock up" Plaintiff's Patents by obtaining exclusive rights to
5  them with the Exclusive License Agreement, then reverse engineer them . . . and avoid
6  paying Plaintiff any money) on October 9, 1998 . . . were applications of Plaintiff's Patents
7  other than the Snowcone Machine and vending-related products discussed;" and (2)
8  "Defendants having 'locked-up' Plaintiff's Patents by fraudulently inducing Plaintiff to enter
9  into the Exclusive License Agreement, Defendants set about to reverse engineer and exploit
10 Plaintiff's Patents . . . and avoid paying Plaintiff money." (PSOF ¶¶ 10,11, 18) (emphasis in
11 original). Mr. Walker's declaration makes virtually the same statements in his declaration to
12 suggest the existence of some type of fraud by the Defendants with respect to the execution
13 of the Exclusive License Agreement. (PSOF ¶ 10, 11, 18). However, such statements are
14 made without any degree of foundation or support and are not somehow suggestive of the
15 existence of fraudulent inducement with respect to the Exclusive License Agreement. See
16 Skillsky v. Lucky Stores, Inc., 893 F.2d 1088, 1091 (9th Cir. 1990) ("[T]estimony that is not
17 based on personal knowledge is hearsay is inadmissible and cannot raise a genuine issue of
18 material fact sufficient to withstand summary judgment."); see also British Airways Board
19 v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978) (nonmoving party cannot rely on speculation
20 or conjecture in meeting its burden of production).

21 Additionally, Plaintiff's suggestion of fraud based upon the draft license agreement,
22 which involved Plaintiff and Defendant CPC, and the final Exclusive License Agreement,
23 which involved Defendant TPS Enterprises, is not credible evidence of fraud. According
24 to Plaintiff, this change from Creative Products to TPS was made to show Plaintiff's "true
25 intentions." (Plaintiff's Response, pp.4-5). Again, Plaintiff offers only speculation. Further,
26 Plaintiff points out that after the Exclusive License Agreement, the Defendants contacted
27 multiple engineers and companies regarding Plaintiff's patents allegedly to "exploit" them.
28 (Id. p.5). However, this conduct of contacting third-parties regarding Plaintiff's technology

1 is clearly authorized by the Exclusive License Agreement and is not indicative of fraud.
2 Finally, Plaintiff identifies that two of the non-disclosure agreements with third-parties
3 regarding Plaintiff's Patents identified either Defendant CPC rather than TPS Enterprises and
4 TPC rather than TPS Enterprises as the licensees of Plaintiff's Patents. However, that fact
5 does not somehow suggest the existence of fraud by TPS Enterprises or any other Defendant
6 during the execution of the Exclusive License Agreement. As noted above, at best, Plaintiff
7 offers speculation and conjecture, which is not evidence at the summary judgment stage. See
8 British Airways, *supra*

9 In rejecting Defendant's newly raised fraudulent inducement claim in support of his
10 patent infringement claim, the Court finds it relevant to note that Plaintiff did not offer any
11 such claim or theory before the Superior Court when Plaintiff sought to enforce the terms of
12 the Agreement to which Plaintiff now claims was fraudulently induced. Moreover, the
13 Superior Court, upon summary judgment, rejected Plaintiff's misrepresentation claim that
14 was based, in part, upon Plaintiff's allegation that the Defendants' misrepresented their intent
15 to manufacture the Snowcone machine and development of any prototype. (DSOF ¶ 31,
16 Exhibit K). The Superior Court noted that "the Agreement did not obligate Defendants to
17 actively pursue the manufacturing of [Plaintiff's] inventions." (Id.). Thus, to the extent
18 Plaintiff claims fraudulent inducement upon the Defendants' inactivity regarding
19 manufacturing or selling the Plaintiff's inventions, that argument is misplaced.

20 As such, there is simply no basis to find the existence of fraudulent inducement to
21 remove the binding impact of the Exclusive License Agreement. No such claim was
22 presented to this Court and there is no admissible evidence to support it.

23 **(2)     Evidence Regarding Infringement**

24 The Court's finding regarding the absence of fraudulent inducement surrounding the
25 Exclusive License Agreement is significant as it essentially bars any claim of infringement
26 regarding Defendants' use of the Plaintiff's Patents during the Exclusive License Agreement
27 period. See McCoy v. Mitsuboshi Cutlery, Inc., 67 F.3d 917, 920 (Fed. Cir. 1995) ("A
28 licensee, of course, has an affirmative defense to a claim of patent infringement."). In other

words, to the extent Plaintiff claims that the Patents were infringed during the period of the Agreement, November 6, 1998, through October 24, 2000, Plaintiff's claim fails as the use of the technology by TPS Enterprises was authorized under the terms of the Agreement. Moreover, with respect to the other named Defendants in this case, Plaintiff's deposition testimony establishes that Plaintiff has not credible claim of patent infringement against them. Specifically, during Plaintiff's deposition he expressly stated that none of the Defendants' infringed the Patents. (DSOF ¶39). In fact, it appears that the only evidence that Plaintiff points to with respect to infringement is the existence of two separate non-disclosure agreements entered into with third-party Wave Systems Integration, LLC and third-party Rose Wang. (PCSOF ¶ 25). As noted above, with respect to the Wave Systems non-disclosure agreement, which Plaintiff contends was not required for confidentiality purposes, Plaintiff notes that the agreement identifies Defendant Creative Products as the licensee rather than TPS Enterprises. Similarly, the Wang disclosure agreement identifies TPC Enterprises, rather than TPS Enterprises as the licensee. (Id.). Plaintiff argues that the fact that entities other than TPS Enterprises, the entity identified in the Exclusive License Agreement, demonstrates that Defendants induced the infringement of Plaintiff's Patents. Again, however, this argument amounts to speculation and conjecture. Notably, Creative Products, Inc., is operated by the same individuals as TPS Enterprises, and located at the same address. In addition, Defendant Schoaf testified that the form used for the non-disclosure agreement with Wave Systems is a standard form used by Creative Products, Inc., and that it was a mistake not to change the licensee to TPS Enterprises. (DSOF ¶28). Defendant Schoaf also testified that it was a typographical mistake in the Wang non-disclosure form with respect to thus of TPC Enterprises rather than TPS Enterprises. (Id.). This testimony, the circumstances surrounding the non-disclosure forms and the speculative allegation by Plaintiff that such errors induced the infringement, justify the Court's finding the non-disclosure forms do not suggest infringement of Plaintiff's Patents. Plaintiff, other than relying on the face of the non-disclosure agreements, does not offer any evidence suggesting that Creative Products or any other entity infringed Plaintiff's Patents.

1 Accordingly, the Court finds that Plaintiff fails to offer any credible evidence suggesting
2 infringement of Plaintiff's Patents during the Agreement period.

3 In addition to the lack of any infringement by Defendants during the Agreement
4 period, Defendant fails to offer any evidence suggesting infringement by Defendants
5 subsequent to the Agreement period. In fact, Plaintiff's deposition testimony makes clear
6 that no such evidence is presented. When questioned regarding Plaintiff's own allegation in
7 the Complaint regarding continued infringement by the Defendants, Plaintiff stated that the
8 allegation was not accurate after October 24, 2000, the date of formal termination of the
9 Agreement by the Plaintiff. (DSOF ¶36). As such, in the absence of any such continued
10 infringement, Plaintiff's patent infringement claim fails with respect to the period subsequent
11 to the termination of the Exclusive License Agreement.

12 Thus, the Court finds that there is no evidence suggesting infringement of Plaintiff's
13 Patents by the Defendants.

14 **(3)     Collateral Estoppel**

15 Lastly, the Court finds that the basis of Plaintiff's patent infringement action is barred
16 by principles of collateral estoppel resulting from the prior Superior Court judgment rendered
17 against Plaintiff in his breach of contract and misrepresentation case against many of the
18 same Defendants named in this suit. Collateral estoppel binds a party to a decision on an
19 issue litigated in a previous lawsuit if the following factors are met: "(1) the issue was
20 actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity
21 and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4)
22 resolution of the issue was essential to the decision, and (5) there is a common identity of the
23 parties." Campbell v. SZL Properties, Ltd., 204 Ariz. 221, 223 (Ariz.App. 2003) (citation
24 omitted). When collateral estoppel is used defensively, *i.e.*, when a defendant seeks to
25 prevent a plaintiff from asserting a claim already unsuccessfully litigated, and the first four
26 elements are satisfied, Arizona does not require a finding of a common identity of the parties.
27 Id. In the instant case, collateral estoppel applies to the majority of Plaintiff's case at it is
28 essentially a second bite at the apple regarding Plaintiff's claim of breach of contract asserted

1 in the Superior Court litigation. For instance, at Plaintiff's deposition, when asked how the
2 Defendants infringed Plaintiff's Patents, Plaintiff responded "[t]hey just promised to perform
3 - to manufacture and sell the apparatuses and never did so from Day One. They went straight
4 into offering them to other people. And then they said they didn't intend to manufacture it
5 from the start." (DSOF ¶ 41). In addition, in Plaintiff's non-uniform interrogatory response,
6 heavily relied upon by Plaintiff, it is further stated that "TPS and other Defendants
7 represented to Murphey that, after gearing-up, TPS would manufacture Apparatuses.
8 Furthermore, after execution of the License, TPS and other Defendants never represented to
9 Murphey that they were not manufacturing Apparatus. This is because, by their own
10 admissions, Defendants never intended to manufacture Apparatus." (PCSOF ¶ 34)).
11 However, even assuming these allegations to be true, the Superior Court already reviewed
12 and adjudicated this issue. In rejecting Plaintiff's breach of contract claim, the Superior
13 Court stated "there was no requirement in the parties' Exclusive License Agreement that
14 Defendants manufacture and/or market the inventions." (DSOF ¶ 31). The Superior Court
15 further noted that "[t]he Agreement expressly permitted Defendants to enter into sublicenses
16 and assign all of their rights and obligations under the Agreement to a third party without the
17 prior approval of Plaintiff. This further establishes that the Agreement did not obligate the
18 Defendants to manufacture and/or market Plaintiff's inventions." (Id.). Thus, to the extent
19 Plaintiff again asserts that the Defendants were required to take certain actions under the
20 Exclusive License Agreement, such claims are clearly barred as the issue has been fully and
21 fairly litigated to a final decision on the merits and thus barred by collateral estoppel.

## V.    Summary

23    Plaintiff's patent infringement claim fails upon summary judgment review. There is
24 simply no basis to rescind the Exclusive License Agreement signed by Plaintiff on the basis
25 of fraud in the inducement. As a result, there is no evidence of patent infringement during
26 the term of the Agreement. In addition, Plaintiff fails to offer any evidence suggesting
27 infringement by the Defendants after the Agreement's termination. Finally, all, or at least
28 a substantial portion, of Plaintiff's suit is barred by collateral estoppel as the issue regarding

Defendants' actions or inaction under the Agreement has been fully and fairly litigated to a final judgment in prior litigation.

**Accordingly,**

**IT IS HEREBY ORDERED** granting Defendants' Motion for Summary Judgment. (Dkt.#37).

**IT IS FURTHER ORDERED** denying as moot Plaintiff's Cross-Motion for Summary Judgment. (Dkt.#42-2).[3]

**IT IS FURTHER ORDERED** denying as moot Defendants' Motion to Strike Plaintiff's Cross-Motion for Summary Judgment. (Dkt.#55-2).

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

DATED this 18th day of September, 2007.

_____
Mary H. Murguia
United States District Judge

---

[3] Plaintiff's Cross-Motion for summary judgment is essentially Plaintiff's response to Defendant's Motion for summary judgment. Plaintiff offers no specific or credible argument in support of the granting summary judgment for the Plaintiff. Because the Court finds that summary judgment, with the benefit of Plaintiff's response, is appropriate, the Court will simply deny as moot Plaintiff's cross-motion.